**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**ELECTRONIC PRIVACY INFORMATION CENTER**
**1718 Connecticut Ave., NW**
**Suite 200**
**Washington, DC 20009**

**Plaintiff,**

**v.**

**DEPARTMENT OF THE ARMY**
**9275 Gunston Road**
**Fort Belvoir, VA 22060**

**Defendant.**

**Civil Action No. _____**

**COMPLAINT FOR INJUNCTIVE RELIEF**

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2014), for injunctive and other appropriate relief, seeking the release of agency records requested by the Electronic Privacy Information Center ("EPIC") from the Department of the Army ("Army") of the U.S. Department of Defense ("DOD").

2. This lawsuit challenges the failure of the Army to disclose documents in response to EPIC's November 1, 2013, Freedom of Information Act request ("EPIC's FOIA Request"). EPIC's FOIA Request sought Army records pertaining to the Joint Land Attack Cruise Missile Defense Elevated Netted Sensor System ("JLENS"). EPIC has exhausted its administrative remedies. EPIC asks the Court to order immediate disclosure of all responsive records.

**Jurisdiction and Venue**

3. This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(A)(vii), 5 U.S.C. § 552(a)(4)(B), and 5 U.S.C. § 552(a)(6)(C)(i) (2014). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2014). Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

**Parties**

4. Plaintiff EPIC is a public interest research organization incorporated as a not-for-profit corporation in Washington, D.C. EPIC conducts oversight of government activities and policies and analyzes their impact on civil liberties and privacy interests. Among its other activities, EPIC publishes books, reports, and a bi-weekly electronic newsletter. EPIC also maintains a popular Internet site, http://epic.org, which contains extensive information on current privacy issues, including documents obtained from federal agencies under the FOIA. EPIC routinely and systematically disseminates information to the public through its website and other media outlets. This Court recognized EPIC's role as a representative of the news media in *EPIC v. Dep't of Defense,* 241 F. Supp. 2d. 5 (D.D.C. 2003).

5. The Department of Defense is a federal agency within the meaning of 5 U.S.C. § 552(f)(1) (2014). The Department of the Army is a component of DOD, which is headquartered in Washington, D.C.

## FACTS

### Background

6. The Department of the Army is planning to deploy Joint Land Attack Cruise Missile Defense Elevated Netted Sensor Systems ("JLENS") in the Washington, DC metropolitan area.

7. The JLENS system "consists of two tethered, 74-meter helium-filled aerostats connected to mobile mooring stations and a communications and processing group. The aerostats fly as high as 10,000 feet above sea level and can remain aloft and operational for up to 30 days. One aerostat carries a surveillance radar with 360-degree surveillance capability; the other aerostat carries a fire control radar."[1]

8. Aerostats are lighter-than-air aircrafts that include balloons, non- and semi-rigid airships, and dirigibles (also known as "blimps").

9. The JLENS allows "commanders to develop and analyze patterns of life over time."[2]

10. The Government Accountability Office ("GAO") reported, "The Army is developing JLENS in two spirals. Spiral 1 is complete and served as a test bed to demonstrate the concept. Spiral 2 will utilize two aerostats with advanced sensors for surveillance and tracking, as well as mobile mooring stations, communication payloads, and processing stations."[3]

---

[1] Raytheon, *JLENS*, http://www.raytheon.com/capabilities/products/jlens/ (last accessed May 6, 2014).
[2] Raytheon, *JLENS: The Future of Defense*, Oct. 22, 2012, *available at* youtube.com/watch?v=q8hkpQ8ujyM.
[3] United States Government Accountability Office, *Assessments of Selected Weapon Programs* 95 (Mar. 2012), *available at* http://www.gao.gov/assets/590/589695.

11. A military test determined that "JLENS' sophisticated radars were able to follow [swarming boat] targets while simultaneously tracking aircrafts, cars and trucks."[4]

12. In addition to the radar-based surveillance system integrated into JLENS orbits, additional surveillance equipment can be installed on orbit-equipped aerostats.

13. JLENS operators can observe surface moving targets in real time using a Raytheon Company MTS-B Multi-Spectral Targeting System mounted on the JLENS.[5]

14. MTS-B is a "long-range surveillance, target acquisition, tracking, range-finding and laser designation for the HELLFIRE missile and all tri-service and NATO laser-guided munitions."[6]

15. Mounting an MTS-B on the JLENS permits video tracking of individual "targets" on the ground without interrupting JLENS' radar-based surveillance operations:

> During the Raytheon-funded demonstration, and despite heavy smoke from recent, naturally-occurring forest fires, an MTS-B electro-optical/infrared (EO/IR) sensor mounted on a JLENS surveillance aerostat tracked numerous targets with the IR sensor. Video from the MTS-B was passed through the aerostat's tether, enabling operators to watch live feed of trucks, trains and cars from dozens of miles away. While the MTS-B visually tracked targets, the JLENS simultaneously tracked surface targets with its integrated radar system, demonstrating the potential to integrate the JLENS radar and EO/IR payloads.[7]

16. One aerostat is meant for wide, 360-degree surveillance that can reach 340 miles, and the other for precision tracking.[8]

17. The JLENS will surveil the Washington, D.C. area for a period of three years.[9]

---

[4] *Taking the Keys: U.S. Army Takes Control of JLENS Airships During Final "Test-Drive" in Utah Desert*, Raytheon Newsroom, Aug. 19, 2013, http://www.raytheon.com/newsroom/feature/rtn13_jlenseut.

[5] Raytheon, *MTS-B*, http://www.raytheon.com/capabilities/products/mts/ (last accessed May 6, 2014).

[6] *Id*.

[7] http://investor.raytheon.com/phoenix.zhtml?c=84193&p=irol-newsArticle_print&ID=1774033

[8] NBC Washington, *Massive Blimps Could Soon Conduct 360-Degree Surveillance Over D.C. Area*, Jul. 25, 2013, http://www.nbcwashington.com/news/local/Massive-Blimps-Could-Soon-Conduct-360-Degree-Surveillance-Over-DC-area.html.

**EPIC's November 1, 2013 FOIA Request**

18. Paragraphs 1-17 above are hereby incorporated by reference as if set forth fully herein.

19. On November 1, 2013, EPIC submitted, via facsimile, a FOIA request to the Army's FOIA Office seeking records regarding the JLENS system ("EPIC's FOIA Request").

20. EPIC's FOIA Request asked for the following agency records:

(1) All technical specifications, contracts, and statements of work for JLENS systems purchased for or contracted for by the Department of the Army, including but not limited to contracts with Ratheon;

(2) All instructions, policies, and procedures concerning the use of JLENS to collect, store, transmit, reproduce, retain, degrade, or delete images and sounds;

(3) All documents detailing the technical specifications of visual and auditory surveillance hardware on JLENS aerostats; and

(4) All contracts and statements of work entered into by the Department of the Army for JLENS hardware, software, or training that concerns the ability of JLENS to collect, obscure, degrade, store, transmit, reproduce, retain, or delete images and sounds.

21. In EPIC's FOIA Request, EPIC also sought "News Media" fee status as a "representative of the news media" under 5 U.S.C. § 552(4)(A)(ii).

22. In EPIC's FOIA Request, EPIC further sought waiver of all duplication fees in accordance with 5 U.S.C. § 552(4)(A), because disclosure of the records requested will contribute significantly to public understanding of the operations or activities of the government.

---

[9] Matthew Hay Brown, *Officials present radar blimp plans for Aberdeen Proving Ground*, The Baltimore Sun, Jan. 16, 2014, http://articles.baltimoresun.com/2014-01-16/news/bs-md-aberdeen-proving-ground-jlens-blimps-20140116_1_aberdeen-proving-ground-blimps-edgewood-area.

23. On November 11, 2013, EPIC received a letter from the Army, signed by Tolu Olabode, Program Analyst, U.S. Army Freedom of Information Act Office, by mail. In the letter, the FOIA officer confirmed receipt of EPIC's FOIA Request. The FOIA officer also stated that EPIC's FOIA Request had been forwarded to "U.S. Army Space and Missile Defense/Army Forces Strategic Command, Attn: SMDC-JA, P.O. Box 1500, Huntsville, Alabama 35807-3801," and "CSTE-SG/FOIA Officer, Secretary of the General Staff, U.S. Army Test and Evaluation Command, 2202 Aberdeen Boulevard – Third Floor, Aberdeen Proving Ground, MD 21005-5001."

**EPIC's February 6, 2014 Administrative Appeal**

24. Paragraphs 1-23 above are hereby incorporated by reference as if set forth fully herein.

25. On February 6, 2014 EPIC filed an administrative appeal with the Army ("EPIC's Administrative Appeal"), via certified mail, for a failure to make a timely determination under the FOIA.

26. At the time of EPIC's Administrative Appeal, 65 business days had elapsed since EPIC's FOIA Request was submitted.

27. In EPIC's Administrative Appeal, EPIC restated its request for "news media" status for fee waiver purposes. EPIC also restated its request that any duplication fees should be waived because the subject of the request will "contribute significantly to the public understating of the operations or activities of the government."

28. According to the United States Postal Service Certified Mail tracker, the Army received EPIC's Administrative Appeal on February 10, 2014 at 9:07 am.

29. On February 18, 2014, EPIC received an email from Kristi Lopez, a FOIA Officer from the US Army Test and Evaluation Command. In the email, she stated that the Test and Evaluation Command is "not the appropriate repository" of the JLENS records. In her email. she stated, "We are diligently working to identify the appropriate repository and will refer your request to them as soon as possible."

30. On February 19, 2014, EPIC received another email from Kristi Lopez. In that email, she stated that EPIC's FOIA Request had been referred to "PEO Missiles and Space, JLENS Product Office, SFAE-MSLS-CMDS-JLN, 5250 Martin Road, Redstone Arsenal, AL 35898."

**EPIC Has Exhausted its Administrative Remedies**

31. Paragraphs 1-30 above are hereby incorporated by reference as if set forth fully herein.

32. It has been 127 business days since EPIC's FOIA Request was received by the Department of the Army Freedom of Information Act Office, which is the component designated by the agency to receive FOIA requests under 5 U.S.C. § 552(a)(6)(A) (2014).

33. The FOIA prescribes a twenty-business day time period in which an agency must make a determination regarding a FOIA request. 5 U.S.C. § 552(a)(6)(A)(i) (2014).

34. Because the Army needed to locate the appropriate component to which to forward EPIC's FOIA Request, the twenty-business day time period began ten business days after the Army FOIA Office first received EPIC's FOIA request. 5 U.S.C. § 552(a)(6)(A) (2014).

35. It has been 97 business days since the Army's 30-business day time period lapsed.

36. It has been 61 business days since the Army received EPIC's Administrative Appeal.

37. The Army has therefore failed to make a determination about EPIC's Administrative Appeal within the twenty-business day time period prescribed by § 552(a)(6)(A)(ii).

38. The Army's failure to respond within the statutory limit constitutes a constructive denial of EPIC's request.

**Count I**
**Violation of FOIA: Failure to Comply With Statutory Deadlines**

39. Paragraphs 1-38 above are hereby incorporated by reference as if set forth fully herein.

40. As described above, the Army's failure to respond to EPIC's Request violated the statutory deadline imposed by the FOIA set forth in 5 U.S.C. § 552 (a)(6)(A)(ii).

41. EPIC has exhausted the applicable administrative remedies with respect to EPIC's FOIA Request. 5 U.S.C. § 552(a)(4)(B).

42. EPIC is entitled to injunctive relief compelling the release and disclosure of the requested agency records.

**Count II**
**Violation of FOIA: Unlawful Withholding of Agency Records**

43. Paragraphs 1-42 above are hereby incorporated by reference as if set forth fully herein.

44. As described above, the Army has failed to comply with statutory deadlines and failed to make responsive records available to EPIC.

45. As a result of Army's unlawful delay, the agency has withheld responsive agency records from EPIC in violation of FOIA, 5 U.S.C. § 552(a)(3)(A).

46. EPIC has exhausted the applicable administrative remedies with respect to EPIC's FOIA Request. 5 U.S.C. § 552(a)(4)(B).

47. EPIC is entitled to injunctive relief compelling the release and disclosure of the requested agency records.

## **Requested Relief**

WHEREFORE, Plaintiff prays that this Court:

A. order Defendant to promptly disclose to Plaintiff responsive agency records;

B. order Defendant to file, within 20 days of the date of the Court's Order in this matter, a *Vaughn* index, *i.e.* an affidavit: 1) identifying each document withheld from disclosure; 2) stating defendant's claimed statutory exemption as to each withheld document (or portion of a document); and 3) explaining why each withheld document is exempt from disclosure;

C. award Plaintiff its costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E) (2014); and

D. grant such other relief as the Court may deem just and proper.

Respectfully submitted,

By: ____/s/ Ginger P. McCall______
Ginger P. McCall, D.C. Bar # 1001104
Marc Rotenberg, D.C. Bar # 422825
Julia Horwitz, D.C. Bar #1018561
ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated: May 6, 2014